Williams, J.
1. While each of these cases presents a question not involved in the other, there is one question common to both, which will be first considered; and that is, whether, when the relict of a former deceased husband or wife dies intestate and without issue, possessed of real or personal property which came to the intestate from such husband or wife, in the manner contemplated by the act of April 11, 1877 (74 Ohio Taws, 81), the one-half of the property passes and descends, under the provisions of that act and the statutes to which it is supplemental, to the brothers and sisters of the whole blood of the former husband or wife, and their representatives, in preference to those of the half blood, and their representatives, or to both classes equally.
In the Stembel case, the question arises in an action brought by the administrators of M. Touise Deshler, in which they ask the direction of the court, in making distri *515 bution of moneys in their hands, the proceeds of personal property which descended to her from her former husband John G. Deshler. It appears, that on the 8th day of January, 1878, John G. Deshler died in Franklin county, seized of certain real property situated in this state, which he had acquired by purchase, and possessed of a personal estate largely beyond what was necessary for the payment of his ■debts and the expenses of administration. He died without issue, and intestate, leaving a widow, M. Eouise Deshler, who died intestate' and without issue, February 12, 1878; ■and the personal property which came to her from her husband, was converted into money by her administrators, who hold it ready for distribution as the court may direct. John G. Deshler had two brothers of the whole blood, both of whom survived him and his widow. One of them has since ■died leaving children. Surviving John- G. Deshler, were also sisters of the half blood, and representatives of a deceased brother and of deceased sisters of the half blood. The controversy, presenting the question now under consideration, is between the brother and representatives of the deceased brother of the whole blood of John G. Deshler, and the sisters and representatives of the deceased sisters and brothers of the half blood. The latter claim they are entitled to share equally with the former in the distribution of one-half of the fund in the hands of the administrators.
In the other case, the question is made in an action for the partition of real estáte of which Margaretta Stone died seized. Silas S. Stone, it appears, died intestate, and without issue, February the 18th, 1884. He had acquired the land, the partition of which was sought in the action, by purchase, and died seized of the same. Margaretta, his widow, died without issue and intestate, January the 21st, 1892, possessed of the land. The plaintiffs in the partition suit, are the children of the only brother of the whole blood of Silas S. Stone, the brother being dead, and there being no sisters of the whole blood or their representatives. The plaintiffs claim they became the owners of one-half of the land upon the death of Margaretta, and her brothers and *516 sisters, and their representatives, the owners of the other half. The brothers and sisters of the half blood of Silas S. Stone, and the representatives of two deceased brothers of the half blood, were, on their motion, made parties defendant.. They claim to be tenants in common with the plaintiffs, and demand partition accordingly.
The question thus presented by each of these cases, must find its solution in the statutes regulating the descent and distribution of the estates of deceased persons, in force when the estates vested.
When Deshler and his widow died, the act of March 14, 1853, as amended April 17, 1857, and the supplemental act of April 11, 1877 ( 74 Ohio Laws, 81), were in force. After-wards, and before the death of Stone and his widow, the statutes were amended in some particulars, but not so as to' affect the question in hand. The provisions of the statutes, so far as they are deemed material to the decision of the question, are: Sections 1 and 2 of the act of March 14, 1853, as amended by the act of April 17, 1857 (S. & C., 501): Section 4 of the act of March 14,1853, and the supplemental act of April 11, 1877. The provisions of sections 1 and 2, which affect the question, are as follows:
“ Section 1. That when any person shall die intestate, having title or right to any real estate or inheritance in this state, which title shall have come to such intestate, by descent or devise, or deed of gift from any ancestor, such estate shall descend and pass in parcenary, to his or her kindred, in the following course:
“ First—To the children of such intestate, or their legal representatives ;
“ Second—If there be no children or their legal representatives living, the estate shall pass to and vest in the husband or wife, relict of such intestate during his or her natural life;
“ Third—If such intestate leave no husband or wife, relict of himself or herself, or at the death of such relict, the estate shall pass to and vest in the brothers and sisters of the intestate who may be of the blood of the ancestor *517 from whom the estate came, or their legal representatives, whether such brothers and sisters be of the whole or half blood of the intestate.”
“ Section 2. That if the estate came not by descent, devise or deed of gift, it shall descend and pass as follows:
“ First—To the children of the intestate and their legal representatives;
“ Second—If there be no children or their legal representatives, the estate shall pass to and be vested in the husband or wife, relict of such intestate ;
“ Third—If such intestate leave no husband or wife relict of himself or herself, the estate shall pass to the brothers and sisters of the intestate of the whole blood and their legal representatives.
“Fourth—If there be no brothers or sisters of the intestate of the whole blood, or their legal representatives, the estate shall pass to the brothers and sisters of the half blood and their legal representatives.”
The other provisions of these two sections, are not deemed important in the decision of the question.
Section 4 of the act of March 14, 1853, provides, that “ If any person shall die intestate, leaving any goods, chattels, or other personal estate, such goods, chattels, or other personal estate shall' be distributed agreeably to the foregoing course, prescribed in the second section of this act, saving, however, such right as any widow may have to any portion of such personal estate.”
The supplemental act of April 11, 1877, is as follows :
“ An act supplementary to the act entitled ‘An act regulating descents and the distribution of personal estates,’ passed March 14, 1853 (S. & C. 501), and to the various acts amendatory thereof.
“ Section 1. Be it enacted by the General Assembly of the State of Ohio, That when any person, the relict of any deceased husband or wife, shall die intestate and without issue, possessed of any real estate, or personal property, which came to such intestate from any former deceased husband or wife, under the provisions of the second section of this act, to which this act is supplementary, then such *518 estate, real and personal, shall pass and descend, one-half to the brothers and sisters of such intestate, or their legal representatives, and one half to the brothers and sisters of such deceased husband or wife from which such personal or real estate came, or their personal representatives.
“Section 2. This act shall take effect from and after its passage.”
These several statutory provisions are now embraced in sections 4158, 4159, 4162, and 4163, of the Revised Statutes. The act of 1857 was construed in Brower v. Hunt, 18 Ohio St., 311. It was there claimed, that property which had come from a deceased husband to his widow, under section two of that act, descended,- upon her decease without issue and intestate, as ancestral property, under section one, to the brothers and sisters of the deceased husband. It was held, however, that her brothers and sisters inherited, under the provisions of section two, the whole of the property she had so received from the estate of her husband. The apparent or supposed hardship and injustice resulting from the statutes, according to that interpretation, gave rise, no doubt, as counsel on both sides maintain, to the supplemental act of 1877. And three distinct views are advanced with respect to that act. One is, that its purpose was to place one-half of such property in the category of ancestral estates, and send it through the same channel of descent. Another, that it prescribes a new and independent rule of succession to the property, complete in itself, under which brothers and sisters of the whole and half blood take as one class. And the other, that the act should be construed in connection with the statutes to which it is supplementary, leaving operative all their provisions, except as changed or abrogated by it; and when so construed, each moiety of the property, it is claimed, descends to the brothers and sisters of the deceased husband or wife, and those of the relict, respectively, in accordance with the provisions of section tw^o of the act of 1857—now, section 4159, of the Revised Statutes.
The argument in support of the first of these propositions, is based chiefly on the decision in Brower v. Hunt, *519 supra; it being, in substance, that, as that decision denied the claim to the property, asserted by the brothers and sisters of the deceased husband, on the ground that the latter was not the ancestor of his widow, within the meaning of section one of the act of 1857, it was the legislative intent, in the enactment of the supplemental statute, to change the rule announced by the court, by making, in legal contemplation at least, the deceased husband or wife, the ancestor of his or her relict. We cannot adopt that view. The legislature appears rather to have accepted the rule established by the decision referred to, and, treating such property as non-ancestral, designed by the act in question, to secure in the future, one-half of the property to the relatives of the deceased husband or wife, and the other half to those of the relict. Such a division appeared to the legislative body to be just and equitable, and that, we think, was the practical end sought, and not the creation of a new class of ancestral estates.
The act undoubtedly establishes a new line of succession, in that, it divides into two equal parts, the property which before its enactment went entirely to the brothers ánd sisters of the intestate relict, and transmits one to the brothers and sisters of the former deceased husband or wife; but it prescribes no express rule as to how the brothers and sisters shall take. All real property, under our statutes of descent, is embraced within the two classes, ancestral, and non-ancestral, and the distribution of personal estates is according to the course prescribed for the descent of non-ancestral real property. -Section 1, of the act of 1857, expressly provides, that when brothers and sisters succeed, under its provisions, to ancestral property, they shall so take it, whether they “ be of the whole or half blood of the intestate.” And by the express provisions of section 2, non-ancestral property passes first to brothers and sisters of the whole blood, and only when there are none of that class, to those of the half blood. The supplemental act, has not, in express terms, provided in which of these two ways broth■ers and sisters shall take the property descending under its provisions. It is contended that, as the terms it has em *520 ployed, in their ordinary and legal import, are sufficient to include in those who may take under' it, brothers and sisters of the half, as well as of the whole blood, the act should receive that construction which will allow the former to take in parcenary with the latter. Whether that would be its proper construction, if the statute provided a complete scheme of descents in itself, it is not necessary to decide. In this, as in many other instances, to arrive at the proper interpretation of the statute, it must be considered in connection with other statutes on the same subject. The act in question became a part of the statutes of descent, and was enacted to supply some defect in then existing legislation, or correct some evil growing out of it. It contains no repealing clause, and did not operate to repeal by implication, any of the statutory provisions then in force, except in so far as it is wholly irreconcilable with them; and must, therefore, be construed in its proper connection with those statutes, and so as to leave effective all of their provisions, not clearly changed or abrogated by it, keeping in view the mischief which it was intended to remed3c The substantial hardship and injustice'growing out of the act of 1857, as construed in Brower v. Hunt, was, that the whole of the non-ancestral property which came to the relict from the former deceased husband or wife, descended upon the death of the relict, to his or her kindred; none of it to the kindred of the deceased husband or wife from whom the estate came. The remedy provided by the supplementary act consisted in dividing the property into two moieties, and giving one to the kindred of each. The general policy pervading our statutes of descent, is, that the nearer of kin shall inherit, in preference to those more remote; and, when the subject of the inheritance is non-ancestral property, brothers and sisters of the whole blood of the intestate, are regarded as nearer of kin to the intestate than those of half blood. The former, therefore, inherit in preference to the latter. That rule prevailed when the supplemental act was passed, and remained unaffected by it. It is not readiE^ perceived why a different course of descent should obtain for the particular non-ancestral propert3'- mentioned *521 in the act, than that which governs all other property of that character; nor, is it apparent the act was designed to accomplish such a result. The order in which the brothers and sisters of the intestate relict inherited before the adoption of that statute, was not within the mischief to be remedied, else that order would not have been retained undisturbed as to non-ancestral property generally. The whole of the mischief complained of was cured, by taking one half of the property from that line of descent, and giving it to the brothers and sisters of the former deceased husband or wife, leaving the other half to descend as the whole of such property had theretofore descended under the provisions of the second section of the act of 1857; the object and scope of the supplemental statute being, we think, to limit the quantity of the property that should thereafter so descend, and not to change its course of descent. We are also of the opinion that the half of the property which goes to the brothers and sisters of the former deceased husband or wife, descends in the same way; that is, first to the brothers and sisters of the whole blood, or their representatives, and if there are none, then to those of the half blood and their representatives. The statute employs the same language in disposing of each half, and it must be presumed that it was used with respect to both in the same sense. There is nothing to indicate a different intention.
In Brcnver v. Hunt supra, the court, in reaching the conclusion that the second section of the act of 1857 provided for all cases of descent not included in the first section, supplied certain words in the second section, which it was thought -were necessary to give complete expression to the legislative intention, as derived from a consideration of both sections. In the opinion, White, J., says: “The second section was intended to provide for all cases not included in the first. The descriptive words of the section are, ‘ if the estate came not by descent, devise or deed of gift;’ yet they have alwaj'S been regarded as embracing a devise or deed of gift from a stranger. Brewster v. Benedict, 14 Ohio, 385; Penn v. Cox, 16 Ohio, 31; Birney v. Wilson et al., 11 Ohio St., 427. The meaning is, ‘if the es *522 tate came not by descent, devise or deed of gift,’ as provided in the first section.” The words, “as provided in the first section,” were plainty implied, though not expressed in the second section; and that section was construed as if the words above quoted were contained in it. ' Those words were not, we think, more plainly implied, than are the words, “as provided in said second section,” after the word “descend” in the supplemental act of-1877. And the proper interpretation of a statute requires that effect be given to what is clearly implied from its language, for that is as much a part of the statute as the language itself. Doyle v. Doyle, 50 Ohio St., 330.
2. Mrs Deshler left surviving her, a brother of the whole blood, and the representatives of a deceased brother of the whole blood, but no brother or sister of the half blood. The brother and representatives of the deceased brother, who are the cross-petitioners in error in the Stembel case, claim the whole of the fund subject to distribution by the administrators; and whether they are entitled to it, or not, is the question peculiar to that case. That they are entitled to the one-half is not disputed. It is claimed they are entitled to the other half, because the personal property out of which the fund arose, did not come to Mrs. Deshler from her husband under section two of the act of 1857 (now section 4159 of the Revised Statutes), but under section 180, of the administration act of March' 23, 1840, which was in force at the death of her husband. That section is as follows: “When the intestate shall not have left any legitimate child of his body, the widow shall be entitled to all the personal estate, as next of kin, which shall be subject to distribution upon settlement of the estate; and if the intestate shall have left such child, the widow shall be entitled, upon distribution, to one-half of any sum not exceeding four hundred dollars, and to one-third of the residue of the personal estate subject to distribution.”
It is first insisted that section two of the act of 1857, has no application to personal property, but merely regulates the descent of non-ancestral real estate; and, though section four of the act of 1853, prescribes the same course for *523 the distribution of the personalty, that kind of property does not pass or descend under section two, but under and by virtue of section four, and is not, therefore, within the provisions of the supplemental act of 1877. It is further contended that the right of the widow to the personal property of her deceased husband, is expressly saved by the fourth section from the operation of the second; and, for that reason, it does not come to her under the latter section.
Considering these statutory provisions together, there is little difficulty in giving them a construction which makes them consistent, and effectuates the manifest intention of the legislature. The act of 1877 is, itself, a legislative interpretation of the statutes in force at the time of its enactment, to the effect, that the personal estate of the deceased husband or wife, who died intestate and without issue, came to the relict under section two of the act of 1857. And unless it is so held, the purpose of the supplemental act is, partially at least, defeated. It may be that, in a technical sense, personalty does not pass under section two. But it passes by virtue of the provisions of section four, in accordance with the rules of descent established by section two; and, in that sense, it comes to the relict from his or her former husband or wife “ under the provisions ” of the latter section. And it seems clear, that such was the sense in which the supplemental act uses the words, “ under the second section of the act to which this act is supplementary.” This construction is not inconsistent with section 180, of the administration act. That section regulates the distribution of the personal estate by the administrator. It provides that the widow shall be entitled to all the personal estate which shall be subject to distribution upon settlement of the estate, if the deceased left no child who could inherit, and if there be such child, then to a part only, upon the distribution. It does not appear inconsistent to hold, that the widow may come to the personal property of her deceased husband under section two, that is, according to the rules of descent prescribed by that section, and be entitled to receive it from the administrator upon distribu *524 tion, on the settlement of the estate, under section 180. If she may take the personal estate under each of the sections, it by n-o means follows that it does not come to her under section two, as well as under the other. Nor, do we think the saving clause contained in section four, prevents the application of the supplementary act to the personal estate received by a widow from her deceased husband. Other statutes secure to her certain articles of personal property, and certain provisions out of the husband’s estate; and, under section 180, though there be a child to inherit, she is nevertheless entitled to a share of the personalty upon distribution. To remove any repugnancy between these provisions, and the rules of succession to the personal estate under sections two and four, the saving clause, no doubt, was inserted in the latter section ; and that confirms the conclusion that where there is no child of the deceased husband to inherit, the whole of his personal estate goes to the widow under section two; for if she could take nothing under that section, as is claimed, there was no need of any saving clause.
3 The cross petitioners in error in the Stone Case, are the brothers and sisters of Margaretta Stone, and the representatives of those who are deceased. They claim that one tract of land included in the action for partition, known as the Kellogg farm, did not come to Margaretta from her husband, but was a new acquisition b3r her after his death. It appears, that in 1873, Alfred Kellogg, who was then the owner of the farm, entered into a contract for the sale of the same to John Huntington, for the sum of ninety thousand dollars. Huntington paid ten thousand dollars on the purchase, and entered into the possession of the land. After-wards, in 1878, Kellogg, by deed duly executed, conveyed the land to Silas S. Stone, and assigned the Huntington contract to him ; Stone agreeing to convey upon payment of the purchase price. This was the condition of the title when Stone died. After his death, and under an arrangement with his administrators, Huntington, and those who had become interested in the land under him, released and transferred to Margaretta, as widow and sole heir at law of *525 Silas Stone, their interest in the land, and paid the administrators twenty-five thousand dollars, in consideration of which, Huntington, and the others, were discharged from further liability on the contract. Stone was seized of the legal title to the land at the time of his death. The right of Huntington under his contract was, to compel the conveyance of the land upon payment of the purchase price. The legal title descended to Margaretta, subject to that right of Huntington. He had an equitable interest in the land to the extent he had made payment of the purchase money, which, upon payment of the residue, would ripen into a. complete equitable title. He chose to surrender his equitable interest, rather than complete his purchase, and take the title. The equitable interest was surrendered to the holder of the legal title, Margaretta; and that was the condition of the estate when she died.
It is well settled that the course of descent of real estate, is controlled by the legal title; and when the legal and •equitable title unite in the same person, the latter becomes merged in the former, and does not descend separately. The legal title draws to it the whole estate, and carries it in the same channel of descent as if the equitable estate had never existed. It follows, that the Kellogg farm descended from Margaretta, as real estate which had come to her from her husband, under section 4159, of the Revised Statutes.

There is no error in the judgmeril of the circuit court on that questioji, and the j^ldgme)lt in that respect is affirmed. But that co2irt erred, we think, in holding that the brothers and sisters of the half blood of Silas S. Stone, or their representatives, were entitled to share in the partition; and that part of its jtidgment is reversed, and the cause remanded, with instructions to sustain the demurrer to their answer and cross-petitiofi, and for partition as prayedfor by the plaintiffs helow. The judgment in the Stembel case is affirmed.